**[J-75-2023]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 803 CAP |
| | : | |
| Appellee | : | Appeal from the Order entered on |
| | : | October 31, 2022, in the Court of |
| | : | Common Pleas, Monroe County, |
| v. | : | at No. CP-45-CR-0001137-2009 |
| | : | |
| | : | SUBMITTED: October 18, 2023 |
| MICHAEL JOHN PARRISH, | : | |
| | : | |
| Appellant | : | |

**OPINION**

JUSTICE BROBSON            **DECIDED: June 18, 2024**

A jury convicted Appellant Michael John Parrish (Parrish) of two counts of first-degree murder for which he received two death sentences. In 2013, this Court affirmed his judgment of sentence. *Commonwealth v. Parrish*, 77 A.3d 557 (Pa. 2013) (*Parrish I*). In 2014, Parrish timely filed a petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa. C.S. §§ 9541-9546, in the Court of Common Pleas of Monroe County (PCRA court). Since that time, the PCRA court has twice issued orders denying Parrish's petition; Parrish appealed those orders, and, on both occasions, this Court remanded the case to the PCRA court for further proceedings.[1] *Commonwealth v. Parrish*, 224 A.3d 682 (Pa. 2020) (*Parrish II*); *Commonwealth v. Parrish*, 273 A.3d 989 (Pa. 2022)

---

[1] A final order under the PCRA, in a case in which the death penalty has been imposed, is directly appealable to this Court. 42 Pa. C.S. § 9546(d).

(*Parrish III*).  This PCRA litigation has returned to the Court for a third time.  After careful review, we again remand the case to the PCRA court with instructions.

## I.  FACTUAL AND PROCEDURAL BACKGROUNDS

### A.  Introduction

This Court previously summarized the factual background underlying this matter as follows:

> This appeal arises from the July 6, 2009 double murder of [Parrish's] girlfriend, Victoria Adams [(Victoria)], and their 19-month-old son, Sidney Parrish [(Sidney) (collectively, Victims)].  [Parrish], Victoria, and Sidney lived in a Monroe County apartment, and, on the day of the murders, [Parrish] remained at the apartment with Sidney while Victoria spent the day with family and friends.  As the day proceeded into evening, [Parrish] became worried that Victoria would not return home in time to give Sidney certain medications he required, a task [Parrish] did not know how to perform.  [Parrish] was additionally concerned that Victoria might be pursuing a romantic relationship with someone else.  That night, [Parrish] made a series of increasingly frequent and agitated calls to Victoria's mobile phone, which she initially answered[] but later ignored.  Later in the evening, Victoria and her companions went to a bar, where Victoria disclosed to them that [Parrish] was abusive and that she wished to end their relationship. Victoria asked three of her companions—her brother, Keith Adams [(Keith)], her cousin, James Ahern [(Ahern)], and a friend, Christopher Ramos [(Ramos)]—to accompany her to the apartment, so that she could retrieve Sidney and her personal belongings[] and end the relationship.
>
> The three men agreed, and the group drove to the apartment. Victoria went inside while her brother Keith, Ahern, and Ramos waited in the car.  Initially, [Parrish] emerged from the apartment brandishing a handgun and threatening Ahern with it, but, after Ahern lied that he, too, was armed, [Parrish] retreated inside.  Shortly thereafter, gun flashes and gunshots emanated from the apartment.  The three men attempted to enter the apartment to assist Victoria, but, as they approached the apartment, [Parrish] retrieved a shotgun and began firing at them, prompting them to flee and contact emergency services.  Ultimately, [Parrish] vacated the apartment, and, approximately 30 to 40 minutes later, the men returned to the apartment, performed a cursory search, and found nothing amiss.
>
> Nearly an hour later, Pennsylvania State Police arrived and entered the apartment, and, during a search of the premises, discovered Victoria's and Sidney's bodies in a back bedroom.  Each had been shot multiple times. [Parrish] became the object of a multi-state manhunt, and he left

Pennsylvania. He was later arrested in New Hampshire, where he was subjected to a search that yielded a .357 Glock semi-automatic handgun, which forensic tests revealed to have been consistent with the firearm that fired the 13 spent cartridge casings recovered from the crime scene. While being questioned by police, [Parrish] waived his *Miranda*[2] rights and confessed to killing Victoria and Sidney, indicating that the events of the evening provoked him into such a rage that he fired a warning shot at the ceiling to get Victoria's attention. However, he recalled that he was so angry that he then "lost it" and shot Victoria while she was holding Sidney, inadvertently striking him, which caused [Parrish] to become even more furious such that he began to "spray" bullets at Victoria and Sidney, firing alternating series of shots at both until he ran out of ammunition.

*Parrish II*, 224 A.3d at 683-85 (Pa. 2020) (citation and footnotes omitted).

The Commonwealth of Pennsylvania (Commonwealth) charged Parrish with two counts of first-degree murder and filed a notice of its intention to seek the death penalty for both charges. After two attempts to plead guilty, Parrish proceeded to a jury trial. "Parrish did not dispute that he killed [V]ictims, but at the guilt phase [he] presented a defense that [he] did not act with a specific intent to kill because he 'blacked out.'" *Parrish III*, 273 A.3d at 994. The jury convicted him on both counts of first-degree murder. During the penalty phase of Parrish's trial, the jury found two aggravating and three mitigating circumstances for each murder conviction.[3]

In terms of aggravating circumstances, the jury determined that Parrish had been convicted of another offense that qualified for the imposition of a death sentence, 42 Pa. C.S. § 9711(d)(10) (providing that aggravating circumstances include defendant being convicted of another offense, committed either before or at time of offense at issue, for which sentence of life in prison or death was imposable), and that he had been

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] "Parrish was represented by two attorneys with the Monroe County Public Defender's Office, the chief public defender of Monroe County Public Defender's Office, attorney Wieslaw Niemoczynski, Esq.[,] for the guilt phase [(guilt phase counsel)] and James Gregor, Esq.[,] for the penalty phase [(penalty phase counsel) (collectively, trial counsel)]." *Parrish III*, 273 A.3d at 994.

convicted of another murder at the time of the offense at issue, 42 Pa. C.S. § 9711(d)(11) (providing that aggravating circumstances include defendant being convicted of another murder either before or at time of offense at issue).[4] Regarding mitigating circumstances, the parties stipulated that Parrish had no significant history of prior criminal convictions. 42 Pa. C.S. § 9711(e)(1) (including as mitigating circumstances fact that defendant has no significant history of prior criminal convictions). In addition, the jury found that Parrish was under the influence of an extreme mental or emotional disturbance, 42 Pa. C.S. § 9711(e)(2) (providing that mitigating circumstances include fact that defendant was under influence of extreme mental or emotional disturbance), and that he met the requirements for the "catchall" mitigator concerning his character and record, 42 Pa. C.S. § 9711(e)(8) (stating that mitigating circumstances include "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense"). The jury concluded that the aggravating circumstances outweighed the mitigating circumstances and recommended the imposition of the death penalty for both murder convictions. On May 15, 2012, the trial court imposed two death sentences upon Parrish.

---

[4] As we explained in *Parrish I*,

> the Commonwealth also submitted a third aggravating circumstance to the jury: the victim, Sidney . . . , was under the age of 12 at the time of the killing, 42 Pa. C.S. § 9711(d)(16). While there was no question at trial that Sidney was well under the age of 12 at the time of his death, based on the record before us, the jury did not find this aggravator. We note, however, that the trial court suggested this discrepancy may be the result of a photocopying error because the sentencing verdict slip for the death of Sidney . . . is nearly identical to the sentencing verdict slip for the death of Victoria . . . . *See* Trial Court Opinion, 10/11/12, at 4 n.3.

*Parrish I*, 77 A.3d at 560 n.3.

**B. Direct Appeal from Judgment of Sentence**

Parrish did not file a notice of appeal; however, the clerk of the trial court informed this Court of his death sentences due to the Court's automatic review of such sentences. *See* Pa.R.A.P. 1941. Parrish later filed a brief in this Court, raising several issues. On September 25, 2013, we filed a unanimous opinion, affirming Parrish's judgment of sentence. *Parrish I.* Therein, "we found [Parrish's] failure to file a notice of appeal waived any claims unassociated with our automatic capital review of the sufficiency of the evidence supporting the verdict and the sentence of death." *Parrish II*, 224 A.3d at 686. In conducting that automatic review,

> we found that [Parrish's] convictions were supported by sufficient evidence[] and that the sentences of death were supported by sufficient evidence proving at least one aggravating factor. We also concluded that the death sentences were not the product of passion, prejudice, or any other arbitrary factor, and, accordingly, we affirmed them. [*Parrish I*, 77 A.3d at 561-62.] [Parrish] petitioned for a writ of certiorari from the United States Supreme Court, which was denied on May 19, 2014. *See Parrish v. Pennsylvania*, 572 U.S. 1123 (2014) (order).

*Id.*

**C. PCRA Litigation**

On August 29, 2014, Parrish, acting *pro se*, timely filed a PCRA petition, and the PCRA court eventually appointed Robert Saurman, Esq. (initial PCRA counsel), to represent Parrish. Initial PCRA counsel filed an amended PCRA petition, raising several claims of ineffective assistance of trial counsel.

> Separately, on April 20, 2015, Parrish filed a petition for writ of habeas corpus in federal court and a motion to stay the federal habeas proceedings to allow counsel to exhaust the habeas claims in state court. The United States District Court for the Middle District of Pennsylvania determined that a stay was not available because Parrish did not show good cause for failing to exhaust his habeas claims first in state court. It dismissed his petition for writ of habeas corpus without prejudice.

*Parrish III*, 273 A.3d at 997-98 (citations omitted).

The PCRA court scheduled an evidentiary hearing for July 27, 2015. On that date, Parrish filed a second amended PCRA petition, wherein initial PCRA counsel, *inter alia*, incorporated by reference the claims that Parrish presented in his federal habeas petition, including a claim that trial counsel were ineffective for failing to file a notice of appeal from Parrish's judgment of sentence. The PCRA court rejected Parrish's attempt to incorporate the habeas claims by reference and directed him to present those claims in a third amended PCRA petition. The PCRA court nevertheless held an evidentiary hearing. Parrish's penalty phase mitigation specialist, Dr. Deborah Belknap, and both of Parrish's trial counsel testified at that hearing. The PCRA court continued the evidentiary hearing to November 3, 2015, at which time other witnesses testified, including Parrish's mitigation expert, Dr. Juliet Yackel.

In the meantime, on September 21, 2015, Parrish filed a lengthy, third amended PCRA petition. In that amended petition, Parrish presented the multitude of claims that he raised in his federal habeas petition. Finally, on April 8, 2016, Parrish filed a fourth amended PCRA petition, alleging that the then-ongoing email scandal involving former-Justices McCaffery and Eakin may reveal that the former Justices were biased against him in casting their votes in *Parrish I.*

On July 14, 2016, the PCRA court issued an opinion and order, denying relief on all claims. Parrish filed a notice of appeal, and, as directed by the PCRA court, initial PCRA counsel filed a statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).[5] In that Rule 1925(b) statement, initial PCRA counsel raised generalized claims regarding trial counsel's stewardship. "In response, the PCRA court,

---

[5] Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), when a party files a notice of appeal and the judge that entered the order "giving rise to the notice of appeal . . . desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal."

seemingly unable to discern which of its rulings on [Parrish's] myriad ineffectiveness claims raised in his amended petitions he was challenging on appeal, issued [an opinion] pursuant to [Pennsylvania Rule of Appellate Procedure] 1925(a), which incorporated its prior opinion." *Parrish II*, 224 A.3d at 690. Given the vague claims presented in the Rule 1925(b) statement, this Court retained jurisdiction but remanded to the PCRA court for the appointment of new counsel. In addition, we asked for supplemental briefing to address the consequences of the filing of the vague Rule 1925(b) statement. The PCRA court subsequently appointed Attorney Robert Patterson, Esq. (present PCRA counsel), to represent Parrish, and the parties submitted supplemental briefing.

This Court then issued a unanimous opinion wherein we concluded that "[initial] PCRA counsel's filing of a vague Rule 1925(b) statement, which ha[d] completely forfeited [Parrish's] right to appellate review of all of his collateral claims, constitute[d] ineffective assistance of counsel *per se*." *Id.* at 701-02. In terms of a remedy, the Court noted that Parrish already had received the appointment of new counsel and, thus, explained that "all that remain[ed was] to remand this matter for the preparation of a new Rule 1925(b) statement *nunc pro tunc*." *Parrish II*, 224 A.3d at 702. The Court further instructed the PCRA court to file an opinion in response to the new Rule 1925(b) statement.

On remand, present PCRA counsel filed a Rule 1925(b) statement (corrected Rule 1925(b) statement), wherein counsel raised a multitude of issues, "including ineffectiveness claims relating to the failure to file a notice of appeal [from Parrish's judgment of sentence]." *Parrish III*, 273 A.3d at 1000. Notably, for the first time in this litigation, the corrected Rule 1925(b) statement injected numerous claims that initial PCRA counsel rendered ineffective assistance. Indeed, all 19 of the errors complained of included allegations that initial PCRA counsel's stewardship was defective. One such claim alleged that initial PCRA counsel rendered ineffective assistance by failing to

present evidence to support a claim that trial counsel failed to file a notice of appeal from Parrish's judgment of sentence.

The PCRA court subsequently issued another opinion pursuant to Rule of Appellate Procedure 1925(a). Therein, the PCRA court observed that, in the corrected Rule 1925(b) statement, Parrish raised 19 issues for appellate review and that each issue contained multiple sub-issues. For all intents and purposes, the PCRA court expressed that it provided its reasons for concluding that these issues do not warrant relief in its earlier July 14, 2016 opinion.[6] Parrish again appealed to this Court.

In this second PCRA appeal, Parrish presented his myriad claims in his brief to this Court, including allegations that initial PCRA counsel rendered ineffective assistance of counsel in many ways. In reference to the claim that initial PCRA counsel ineffectively litigated the issue of whether trial counsel rendered deficient stewardship relative to Parrish's right to appeal from his judgment of sentence and relying on our then-recent decision in *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021),[7] the Court in *Parrish III* determined that "Parrish adequately raised and preserved his layered claim of the

---

[6] In *Parrish III*, we described this Rule 1925(a) opinion as follows:

> The PCRA court observed that it had previously disposed of seven of the issues on the merits, including the failure to file a requested direct appeal. It further stated that the twelve issues it had not addressed were "without merit." The PCRA court did not address Parrish's failure to consult issue . . . .

*Parrish III*, 273 A.3d at 1001 (citations and emphasis omitted). In addition, the PCRA court noted that any issue regarding the stewardship of initial PCRA counsel was "not properly before" the PCRA court and that present PCRA counsel raised the ineffectiveness of initial PCRA counsel "to preserve the issue for appeal." (PCRA Court Opinion, 9/22/2020, at 4 n.13.)

[7] In *Bradley*, the Court held "that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." *Bradley*, 261 A.3d at 401 (footnote omitted).

ineffective assistance of trial and initial PCRA counsel by raising it at the first opportunity to do so, specifically in his [c]orrected [Rule] 1925(b) [s]tatement and in his brief filed with this Court in this appeal." *Id.* at 1002. The Court ultimately concluded that "Parrish [was] entitled to a remand to present evidence and argument to substantiate his claim that he is entitled to reinstatement of his direct appeal rights nunc pro tunc." *Id.* at 1007. The Court directed as follows:

> Upon the PCRA court's grant or denial of this relief, if either Parrish or the Commonwealth appeal that determination, the PCRA court should file a supplemental [Rule] 1925(a) opinion to address that decision. Parrish's ineffectiveness claims raised in the appeal from the PCRA court's denial of his previously[ ]filed PCRA petitions will then be considered.

*Id.* The Court relinquished jurisdiction.[8]

After the Court remanded this matter a second time, present PCRA counsel filed a document that he entitled "Motion to Withdraw Post Conviction Relief Act Claim of Failure to Consult on Right to File a Direct Appeal Following Conviction" (Motion to Withdraw). In the Motion to Withdraw, present PCRA counsel stated that he spoke with Parrish by telephone at least four times in preparation for an evidentiary hearing. Present PCRA counsel averred that he discussed with Parrish at length the issue of whether trial counsel consulted with him regarding his right to file an appeal from his judgment of sentence. Through the Motion to Withdraw, present PCRA counsel also informed the PCRA court that he discussed this issue with Parrish's trial counsel.

---

[8] Justice Dougherty, joined by Justice Mundy and this author, filed a dissenting opinion. *Parrish III*, 273 A.3d at 1007-11 (Dougherty J., dissenting). The dissent acknowledged that, in his corrected Rule 1925(b) statement, Parrish included a claim that trial counsel were ineffective for failing to file a notice of appeal on his behalf. The dissent, however, opined that, because Parrish's corrected Rule 1925(b) statement did not include a distinct claim alleging that trial counsel were ineffective for failing to consult with Parrish regarding his right to a direct appeal, he waived any such claim for purposes of the appeal in *Parrish III*.

According to present PCRA counsel, on October 26, 2022, he and Parrish had another telephone conversation, at which time Parrish advised present PCRA counsel that he wanted to withdraw his claim that his trial counsel rendered ineffective assistance by failing to consult with him about his direct appeal rights. Present PCRA counsel expressed that, "[b]ased upon prior conversation with [Parrish], review of the transcripts, and discussions with trial counsel, [present PCRA counsel] concurs with [Parrish's] request to withdraw the pending claim." (Motion to Withdraw, 10/26/2022, ¶15.) Present PCRA counsel asserted that Parrish's decision was made knowingly, intelligently, and voluntarily.

In response to the Motion to Withdraw, the PCRA court entered an order on October 31, 2022. In pertinent part, the PCRA court stated that, "after a hearing at which this [c]ourt ascertained on the record that [Parrish] made his decision to withdraw his claim knowingly, voluntarily, and intelligently, said Motion to Withdraw is granted and [Parrish's] claim of ineffectiveness for failure to file a direct appeal following conviction is therefore dismissed." (PCRA Court Order, 10/31/2022 (emphasis omitted).) The PCRA court then asserted that, because the Court in *Parrish III* relinquished jurisdiction, "[Parrish] is advised that he has thirty [] days from the date of this [o]rder within which to file an appeal with the Pennsylvania Supreme Court concerning all claims raised in his [PCRA petition] and denied by [the PCRA court] in an [o]pinion and [o]rder dated July [14], 2016." (*Id.* (footnote omitted).) On November 15, 2022, Parrish filed a notice of appeal.[9]

---

[9] The PCRA court directed Parrish to file another Rule 1925(b) statement. Present PCRA counsel filed a Rule 1925(b) statement but merely incorporated by reference the claims that Parrish presented in his corrected Rule 1925(b) statement, save for the layered claim of ineffective assistance of counsel regarding trial counsel's alleged failure to consult with him about his direct appeal rights. The PCRA court subsequently issued another opinion wherein the court relied on its previous opinions.
(continued…)

## II. DISCUSSION

### A. Introduction

As noted above, in the corrected Rule 1925(b) statement following this Court's remand order in *Parrish II*, Parish purported to present 19 claims of ineffective assistance of counsel. Most of those claims contain sub-issues, and all of them include allegations that initial PCRA counsel rendered ineffective assistance of counsel. Parrish has decided to pursue all, or at least the vast majority, of those claims in his current brief to this Court, save for the layered claim that we addressed in *Parrish III*.

---

This Court has long held that "[a]ny issues not raised in a [Rule] 1925(b) statement will be deemed waived." *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998). In addition, the Superior Court has consistently frowned upon appellants' attempts to satisfy Rule 1925(b) simply by incorporating by reference previously filed documents. *See, e.g.*, *Commonwealth v. Smith*, 955 A.2d 391, 393 n.5 (Pa. Super. 2008) ("We do not condone the [appellant's] incorporation by reference of its motion for reconsideration. A Rule 1925(b) statement should include a concise statement of each issue to be raised on appeal.") (citing *Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005)).

We observe, however, that our remand instructions in *Parrish III* did not include any need for the PCRA court to direct Parrish to file another Rule 1925(b) statement. Rather, we instructed that, after the PCRA court decided whether Parrish was entitled to relief based upon his layered claim of ineffective assistance of counsel regarding trial counsel's alleged failure to consult with him concerning his right to pursue a direct appeal, the PCRA court should file a supplemental Rule 1925(a) opinion if either party decided to appeal that decision. *Parrish III*, 273 A.3d at 1007. This Court in *Parrish III* further explained that "Parrish's ineffectiveness claims raised in the appeal from the PCRA court's denial of his previously[ ]filed PCRA petitions will then be considered." *Id.*

Our instruction to the PCRA court to provide another Rule 1925(a) opinion was obviated by Parrish's decision to withdraw his layered claim. Thus, the PCRA court's directive to Parrish to file another Rule 1925(b) statement was superfluous. Consequently, under these unique circumstances, we decline to find waiver on the basis that Parrish failed to comply with Rule 1925(b).

## B. Parties' Arguments

### 1. Parrish's Arguments

Although Parrish's current brief to this Court contains argument that the PCRA court erred by rejecting some of his claims, the overall theme of the brief is that initial PCRA counsel's representation of Parrish was so deficient that it infected every aspect of this litigation. (*See*, *e.g.*, Parrish's Brief at 30 ("Due to the ineffectiveness of [Parrish's] prior PCRA counsel, nothing about the litigation below meets the basic due process and statutory rights afforded PCRA petitioners or the Eighth Amendment requirements for heightened reliability and procedural safeguards in capital cases.").) Indeed, the entirety of Parrish's argument in support of his first issue is dedicated to his belief that initial PCRA counsel's global ineffectiveness necessitates a remand to the PCRA court. (*Id.* at 31-45.)

In furtherance of this position, Parrish reminds the Court that, in *Bradley*, we held "that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." (*Id.* at 32 (quoting *Bradley*, 261 A.3d at 402 (footnote omitted)).) Parrish also points out the following excerpt from *Bradley*:

> In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly[ ]raised ineffectiveness claims. However, in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter.

*Bradley*, 261 A.3d at 402 (citation omitted). Parrish then reports that he has provided this Court with various documents that he appended to his brief which, combined with the trial and PCRA records, raise issues of material fact regarding initial PCRA counsel's representation of Parrish.

In addition, Parrish observes that, in *Parrish II*, this Court deemed initial PCRA counsel ineffective *per se* due to his failure to comply with Pennsylvania Rule of Appellate

Procedure 1925(b). Parrish subsequently focuses on specific instances where he believes initial PCRA counsel's stewardship was severely lacking. (Parrish's Brief at 33-43.) Consistent with the allegations that he made in the corrected Rule 1925(b) statement, Parrish's overarching complaints concerning initial PCRA counsel's representation center on allegations that initial PCRA counsel: (1) presented the PCRA court with inaccurate, underdeveloped arguments in support of his claims of ineffective assistance of trial counsel; and (2) failed to support Parrish's claims of ineffective assistance of trial counsel with available evidence.

Parrish expresses that, given the limited nature of the previous remands from this Court to the PCRA court, present PCRA counsel "has never been in a procedural posture allowing [him] to conduct the type and scope of investigation (and to request the resources needed to complete that investigation) required of the issues identified in the prior PCRA proceedings and related [h]abeas petition." (*Id.* at 42.) For these reasons, Parrish insists that this Court should remand the matter back to the PCRA court to ensure that he receives meaningful collateral review of his convictions and sentences. After concluding his argument under this issue, Parrish presents his second issue, which includes various claims of PCRA court error, as well as many claims regarding the stewardship of trial counsel. (*Id.* at 45-146.) Notably, all of these claims and arguments contain allegations that initial PCRA counsel's performance in this ligation, or lack thereof, undermined Parrish's contentions that he is entitled to collateral relief through the PCRA. (*See, e.g.*, *id.* at 56 ("The PCRA court's denial of this claim was the consequence of PCRA counsel's ineffectiveness in failing to investigate, present and argue the full factual and legal effects of trial counsel's conflict of interest and the resulting adverse effect on [Parrish's] defense.").)

## 2. Commonwealth's Arguments

The Commonwealth acknowledges our holding in *Bradley*.  It, however, notes that the *Bradley* Court stated that its newly announced process for raising claims of PCRA counsel's ineffectiveness is "subject to the possibility of future refinements[.]" (Commonwealth's Brief at 11 n.1 (quoting *Bradley*, 261 A.3d at 382 n.2).)  The Commonwealth expresses its view that *Bradley* "leaves open the question of what the Commonwealth's responsibility is when newly appointed counsel or a petitioner acting *pro se* raise[s] issues for the first time on appeal and how the Commonwealth may challenge these claims."  (*Id.* at 11.)  It then offers several grounds upon which it believes Parrish's newly raised claims should fail.

First, the Commonwealth essentially argues that the overwhelming number of claims in Parrish's brief, combined with the complexity and facts of this case, should result in a finding that Parrish waived his new claims.  (*Id.* at 12-17.)  Next, the Commonwealth complains that Parrish supports his new claims with documents contained in the various appendices to his brief.  According to the Commonwealth, these documents and the information contained therein do not appear in the record and, therefore, do not exist for purposes of this appeal.  The Commonwealth ultimately addresses the merits of Parrish's claims with the view that none of the claims meet the standard for assessing claims of ineffective assistance of counsel.[10]  Rather, the Commonwealth asserts, the record demonstrates that Parrish's murder convictions and death sentences were the result of the overwhelming evidence that established that he executed Victims.  (*Id.* at 18.)

---

[10] To overcome the presumption that counsel provided effective assistance, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, "that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different." *Commonwealth v. Cooper*, 941 A.2d 655, 664 (Pa. 2007).

## C. Analysis

As noted above, the Court in *Parrish III* held that "Parrish adequately raised and preserved his layered claim of the ineffective assistance of trial and initial PCRA counsel by raising it at the first opportunity to do so, specifically in his [c]orrected [Rule] 1925(b) [s]tatement and in his brief filed with this Court in [that] appeal." *Parrish III*, 273 A.3d at 1002. This holding related specifically to Parrish's "layered claim" concerning initial PCRA counsel's alleged failure to adequately litigate the claim that trial counsel rendered ineffective assistance by not consulting with Parrish regarding his direct appeal rights. Yet, present PCRA counsel raised all of Parrish's "layered claims" involving initial PCRA counsel in the same manner—after present PCRA counsel was appointed to represent Parrish, he presented all of the "layered claims" in the corrected Rule 1925(b) statement and subsequently in his briefs to this Court.[11]

This unique and, frankly, troubling procedural history has placed the Commonwealth and this Court in a predicament: there is neither a PCRA court record nor a ruling on Parrish's ineffectiveness claims directed toward initial PCRA counsel. As the Commonwealth highlights in its brief, these circumstances make it challenging, if not impossible, for the Commonwealth to fulfill its responsibility to respond to the claims that Parrish raises for the first time on appeal. Similarly, we are significantly hampered in our

---

[11] In the corrected Rule 1925(b) statement, present PCRA counsel, for the most part, offered fairly developed claims regarding the effectiveness of trial counsel's representation of Parrish. In comparison, present PCRA counsel's claims concerning the stewardship of initial PCRA counsel were underdeveloped. (*See*, *e.g.*, Corrected Rule 1925(b) Statement, 7/6/2020, at ¶ 6 (providing approximately one-half page of explanation regarding trial counsel's representation of Parrish relative to evidence presented by Commonwealth at guilt and penalty phases of trial and then asserting, "PCRA counsel was ineffective for failing to present all available facts, law, and argument in support of this claim").)

ability to assess these claims; indeed, we have no means by which to exercise our traditional standard of review in PCRA matters.[12]

To remedy this problematic situation and promote a final resolution to this prolonged litigation, we again, reluctantly, remand the matter to the PCRA court. We do so based upon our conclusion that the PCRA court needs to further develop the record in this case and consider, in the first instance, Parrish's layered claims, all alleging the ineffective assistance of initial PCRA counsel. *Bradley*, 261 A.3d at 402. On remand, the PCRA court shall resolve Parrish's preserved, layered claims involving the ineffectiveness of initial PCRA counsel.[13] The PCRA court shall have use of all of the general procedures to complete this task, including the discretion to require additional briefing, argument, and evidentiary hearings.

Along the same lines, given the way that Parrish raised his claims of ineffective assistance of initial PCRA counsel, those claims have never been the subject of an amended PCRA petition. If Parrish believes that it would be helpful to the disposition of his claims, Parrish has the right to seek leave to amend the PCRA petition.

---

[12] Our well-settled standard of review in appeals from orders denying PCRA relief is as follows:

> Generally speaking, when this Court reviews an order dismissing or denying a PCRA petition, its standard of review is whether the findings of the PCRA court are supported by the record and are free from legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court[.] [An appellant] has the burden to persuade this Court that the PCRA court erred and that such error requires relief.

*Commonwealth v. Wholaver*, 177 A.3d 136, 144-45 (Pa. 2018) (citations and internal quotation marks omitted).

[13] To be clear, while it appears that Parrish has preserved the layered claims that he presents in his brief to this Court in a way that is consistent with *Parrish III*, we leave it for the PCRA court to determine what claims Parrish has truly preserved.

Pa.R.Crim.P. 905(A). The PCRA court should freely allow such amendment to achieve substantial justice. *Id.* Importantly, Parrish is precluded from injecting additional issues and claims into the matter. This admonishment, however, does not prevent Parrish from withdrawing claims, as he did after our decision in *Parrish III*. As present PCRA counsel points out, "the winnowing of appellate claims requires a full and complete record" and involves "considerable skill, care, and attention[.]" (Parrish's Reply Brief at 13.). Thus, with a more complete record, Parrish should affirmatively abandon meritless issues.

### III. CONCLUSION

For the reasons provided above, we remand this matter to the PCRA court. On remand, the PCRA court and the parties are limited to addressing and resolving Parrish's preserved, layered claims that include allegations of initial PCRA counsel's ineffective assistance. When the PCRA court enters a final order, the parties can appeal that order to this Court. Jurisdiction relinquished.

Chief Justice Todd and Justices Donohue, Dougherty, Wecht and Mundy join the opinion.

Justice McCaffery did not participate in the consideration or decision of this matter.